1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11  Kythera Biopharmaceuticals, )   CV 13-6338 RSWL (SSx)
    Inc.,                       )
12                              )
                 Plaintiff,     )   **ORDER re: Defendant's**
13                              )   **Motion to Dismiss the**
                                )   **Complaint [20]**
14       v.                     )
                                )
15  Lithera, Inc.,              )
                                )
16                              )
                                )
17               Defendant.     )
                                )
18                              )
                                )
19  _____ )

20       Currently before the Court is Defendant Lithera,

21  Inc.'s ("Defendant") Motion to Dismiss the Complaint

22  [20].  Plaintiff Kythera Biopharmaceuticals, Inc.

23  ("Plaintiff") filed its Opposition on December 17, 2013

24  [30].  Defendant filed a Reply on December 23, 2013

25  [31].  This matter was taken under submission on

26  January 2, 2014 [32].  Having reviewed all papers

27  submitted pertaining to the Motion, and having

28  considered all arguments presented to the Court, the

                             1

1  Court **NOW FINDS AND RULES AS FOLLOWS:**

2      Defendant's Motion to Dismiss is hereby **DENIED.**

3                        **I.   Background**

4      Plaintiff is a Delaware corporation with its

5  principal place of business in California.  Compl. ¶ 2.

6  Defendant is also a Delaware corporation with its

7  principal place of business in California.  <u>Id.</u> at ¶ 3.

8      Plaintiff is a biopharmaceutical company dedicated

9  to researching and developing pharmaceuticals used in

10 aesthetic medicine, including pharmaceuticals to reduce

11 human body fat.  <u>Id.</u> at ¶ 6.  Plaintiff was founded in

12 2005.  <u>Id.</u>  Since 2006, Plaintiff has used the mark

13 KYTHERA for its pharmaceutical research and

14 development, including in connection with its lead

15 product candidate, ATX-101, which is designed to reduce

16 human body fat.  <u>Id.</u> at ¶ 7.

17     Plaintiff owns a federal trademark registration for

18 KYTHERA, U.S. Reg. No. 3357920, registered December 18,

19 2007.[1]  <u>Id.</u> at ¶ 9.  Plaintiff also owns a federal

20

21     [1] Specifically, the service mark registration was
22 granted for: "Chemical research; Chemical, biochemical,
   biological and bacteriological research and analysis;
23 Conducting early evaluations in the field of new
24 pharmaceuticals; Development and test of chemical
   production methods; Development of new technology for
25 others in the field of biotechnology; Development of
26 pharmaceutical preparations and medicines; Medical and
   scientific research in the field of biotechnology;
27 medical and scientific research, namely, conducting
28 clinical trials; Pharmaceutical drug development
   services; Pharmaceutical product evaluation;

1 trademark registration for KYTHERA, U.S. Reg. No.
2 4012388, registered August 16, 2011.[2]  Id. at ¶ 11.

3     Plaintiff has invested considerable resources to
4 advertise and promote its goods and services under its
5 KYTHERA marks and trade names.  Id. at ¶ 12.

6     After Plaintiff first used its KYTHERA marks and
7 trade names, Defendant filed an intent to use
8 application in the United States Patent and Trademark
9 Office ("USPTO") for LITHERA for "pharmaceutical
10 preparations for reducing the size and appearance of
11 adipose deposits in a body."  Id. at ¶ 14.  Defendant
12 received a federal trademark registration for LITHERA,
13 U.S. Reg. No. 4067542, registered December 6, 2011.
14 Id. at ¶ 15.  Defendant's trademark application alleges
15 a date of first use of Lithera in commerce of September
16 2011.  Id.  Defendant advertises its goods and services
17 at lithera.com.  Id. at ¶ 14.

18

19 _____

20 Pharmaceutical research and development; Pharmaceutical
research services; Research on the subject of
21 pharmaceuticals; Testing, inspection or research of
pharmaceuticals, cosmetics or foodstuff."  Compl. Ex.
22 A.

23     [2] Specifically, a service mark was granted for:
24 "Research and development of pharmaceutical
preparations and aesthetic preparations; medical and
25 scientific research information in the fields of
pharmaceutical preparations, aesthetic preparations and
26 clinical trials; and providing a website featuring
information about investigational pharmaceutical
27 preparations and aesthetic preparations."  Compl. Ex.
28 B.

1    The Parties' goods and services are discussed and
2    presented under the KYTHERA and LITHERA marks and names
3    in the same publications, including investor
4    publications, and at the same conferences.  Id. at ¶
5    20.  Plaintiff has demanded that Defendant cease and
6    desist all use of LITHERA and similar names and marks,
7    but Defendant has refused to do so.  Id. at ¶ 23.
8         Plaintiff filed its Complaint on August 29, 2013
9    [1], alleging trademark infringement, unfair
10   competition, and false designation of origin under 15
11   U.S.C. §§ 1114, and 1125, and under California law.
12   Plaintiff also included a claim for trademark
13   cancellation under 15 U.S.C. §§ 1052(d), and 1119 [1].
14        Defendant filed the instant Motion to Dismiss the
15   Complaint on November 25, 2013 [20].
16                    **II.  Legal Standard**
17   **A.  Motion to Dismiss Pursuant to Rule 12(b)(6)**
18        Federal Rule of Civil Procedure 12(b)(6) allows a
19   party to move for dismissal of one or more claims if
20   the pleading fails to state a claim upon which relief
21   can be granted.  Dismissal can be based on a lack of
22   cognizable legal theory or lack of sufficient facts
23   alleged under a cognizable legal theory.  Balistreri v.
24   Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.
25   1990).  However, a party is not required to state the
26   legal basis for its claim, only the facts underlying
27   it.  McCalden v. Cal. Library Ass'n, 955 F.2d 1214,
28   1223 (9th Cir. 1990).  In a Rule 12(b)(6) motion to

1   dismiss, a court must presume all factual allegations
2   of the complaint to be true and draw all reasonable
3   inferences in favor of the non-moving party.  Klarfeld
4   v. United States, 944 F.2d 583, 585 (9th Cir. 1991).

5       The question presented by a motion to dismiss is
6   not whether the plaintiff will prevail in the action,
7   but whether the plaintiff is entitled to offer evidence
8   in support of its claim.  Swierkiewica v. Sorema N.A.,
9   534 U.S. 506, 511 (2002).  "While a complaint attacked
10  by a Rule 12(b)(6) motion to dismiss does not need
11  detailed factual allegations, a plaintiff's obligation
12  to provide the 'grounds' of his 'entitle[ment] to
13  relief' requires more than labels and conclusions, and
14  a formulaic recitation of a cause of action's elements
15  will not do."  Bell Atl. Corp. v. Twombly, 550 U.S.
16  544, 555 (2007) (internal citation omitted).  Although
17  specific facts are not necessary if the complaint gives
18  the defendant fair notice of the claim and the grounds
19  upon which the claim rests, a complaint must
20  nevertheless "contain sufficient factual matter,
21  accepted as true, to state a claim to relief that is
22  plausible on its face."  Ashcroft v. Iqbal, 556 U.S.
23  662, 678 (2009) (internal quotation marks omitted).

24      If dismissed, a court must then decide whether to
25  grant leave to amend.  The Ninth Circuit has repeatedly
26  held that a district court should grant leave to amend
27  even if no request to amend the pleadings was made,
28  unless it determines that the pleading could not

1   possibly be cured by the allegation of other facts.

2   <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000).

3                    **III.   Discussion**

4   **A.   Request for Judicial Notice**

5        Defendant requests that this Court take judicial

6   notice of Plaintiff's federal service mark

7   registrations, the USPTO's records of the

8   registrations, and Plaintiff's Securities and Exchange

9   Commission public filings.  Mot. 3:18-4:14.

10       "A court may . . . consider certain

11  materials–documents attached to the complaint,

12  documents incorporated by reference in the complaint,

13  or matters of judicial notice–without converting [a]

14  motion to dismiss into a motion for summary judgment."

15  <u>United States v. Ritchie</u>, 342 F.3d 903, 907-08 (9th

16  Cir. 2003) (citing <u>Van Buskirk v. CNN</u>, 284 F.3d 977,

17  980 (9th Cir. 2002); <u>Barron v. Reich</u>, 13 F.3d 1370,

18  1377 (9th Cir. 1994)).  The incorporation by reference

19  doctrine permits the Court to "take into account

20  documents 'whose contents are alleged in a complaint

21  and whose authenticity no party questions, but which

22  are not physically attached to the [plaintiff's]

23  pleading.'"  <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1076 (9th

24  Cir. 2005) (quoting <u>In re Silicon Graphics Inc. Sec.</u>

25  <u>Litig.</u>, 183 F.3d 970, 986 (9th Cir. 1999)); <u>see also</u>

26  <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688 (9th Cir.

27  2001).  The Ninth Circuit has "extended the

28  'incorporation by reference' doctrine to situations in

                              6

which the plaintiff's claim depends on the contents of the document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document." Id. (citing Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998)).

Plaintiff's service mark registrations are attached to its Complaint (Compl. Exs. A-B), and these registrations form the basis of some of Plaintiff's claims of trademark infringement (see e.g., Compl. ¶¶ 31-36). As such, the Court takes judicial notice of the trademark records for Plaintiff's trademark registrations.

Furthermore, "[o]n a motion to dismiss, a court may take judicial notice of matters of public record outside the pleadings." Plevy v. Haggerty, 38 F. Supp. 2d 816, 821 (C.D. Cal. 1998) (citing MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986); Kramer v. Time Warner, Inc., 837 F.2d 767, 774 (2d Cir. 1991)). Such public records include Securities and Exchange Commission ("SEC") filings. Id. Accordingly, the Court also takes judicial notice of Plaintiff's SEC filings.

**B. Trademark Infringement**

In its Complaint, Plaintiff has alleged causes of action for: (1) trademark infringement, (2) unfair competition, and (3) false designation of origin under the Lanham Act, 15 U.S.C. §§ 1114 & 1125, and under California law. Compl. ¶¶ 25-36, 40-44.

1     This Court analyzes these claims together for the
2  purposes of this Motion.  "[T]he courts have uniformly
3  held that common law and statutory trademark
4  infringement are merely specific aspects of unfair
5  competition."  Hokto Kinoko Co. v. Concord Farms, Inc.,
6  810 F. Supp. 2d 1013, 1031 (C.D. Cal. 2011) (citing New
7  West Corp. v. NYM Co. of California, Inc., 595 F.2d
8  1194, 1201 (9th Cir. 1979)); see also Grey v. Campbell
9  Soup Co., 650 F. Supp. 1166, 1173 (C.D. Cal. 1986)
10  ("The tests for infringement of a federally registered
11  mark under § 32(1), 15 U.S.C. § 1114(1), infringement
12  of a common law trademark, unfair competition under §
13  43(a), 15 U.S.C. § 1125(a), and common law unfair
14  competition involving trademarks are the same").  A
15  claim for false designation of origin under 15 U.S.C. §
16  1125 requires proof of the same elements as a claim for
17  trademark infringement under 15 U.S.C. § 1114.
18  Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.,
19  174 F.3d 1036, 1046 n.6 (9th Cir. 1999) (citing 15
20  U.S.C. §§ 1114(1) & 1125; AMF Inc. v. Sleekcraft Boats,
21  599 F.2d 341, 348 (9th Cir. 1979)).  Furthermore, the
22  Ninth Circuit "has consistently held that state common
23  law claims of unfair competition . . . are
24  'substantially congruent' to claims made under the
25  Lanham Act."  Cleary v. News Corp., 30 F.3d 1255, 1262-
26  63 (9th Cir. 1994) (citing Academy of Motion Picture
27  Arts & Scis. v. Creative House Promotions, Inc., 944
28  F.2d 1446, 1457 (9th Cir. 1991)).

To prove a claim of trademark infringement, a plaintiff must show: (1) that it has a valid, protectable trademark, and (2) that defendant's use of the mark is likely to cause confusion.  Applied Info. Scis. Corp. v. eBay, Inc., 511 F.3d 966, 969 (9th Cir. 2007) (citing Brookfield Commc'ns, 174 F.3d at 1047, 1053)); Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1134 (9th Cir. 2006) ("A claim of trademark infringement under § 1114(1)(a) of the Lanham Act requires a trademark holder to demonstrate: (1) ownership of a valid mark (i.e., a protectable interest), and (2) that the alleged infringer's use of the mark is likely to cause confusion, or to cause mistake, or to deceive consumers") (internal quotes omitted) (quoting KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 408 F.3d 596, 602 (9th Cir. 2005)).

### 1.  Validity of the Trademarks

Defendant contends that Plaintiff has no protectable interest in the KYTHERA marks because Plaintiff does not use those marks in connection with performing services for the benefit of others.  Mot. 8:1-13; Reply 13:19-21.  Plaintiff avers that its federal trademark registrations show the incontestible status and validity of its rights in the KYTHERA marks.  Opp'n 8:2-13.

The Lanham Act defines a trademark as:
   any word, name, symbol, or device, or any
   combination thereof—

9

1     (1) used by a person, or

2     (2) which a person has a bona fide intention to

3     use in commerce and applies to register on the

4     principal register established by this chapter,

5     to identify and distinguish his or her goods,

6     including a unique product, from those

7     manufactured or sold by others and to indicate

8     the source of the goods, even if that source is

9     unknown.

10   15 U.S.C. § 1127.  Service marks are similarly defined;

11   in fact "the only difference between a trademark and a

12   service mark is that a trademark identifies goods while

13   a service mark identifies services. . . .  Service

14   marks and trademarks are identified by identical

15   standards."  Chance v. Pac-Tel Teletrac, Inc., 242 F.3d

16   1151, 1156 (9th Cir. 2001) (citing West & Co., Inc. v.

17   Arica Inst., Inc., 557 F.2d 338, 340 n.1 (2d Cir.

18   1977); Caesars World, Inc. v. Caesar's Palace, 490 F.

19   Supp. 818, 822 (D.N.J. 1980)).

20       Typically, "[r]egistration of a mark 'on the

21   Principal Register in the Patent and Trademark Office

22   constitutes prima facie evidence of the validity of the

23   registered mark and of [the registrant's] exclusive

24   right to use the mark on the goods and services,

25   specified in the registration.'"  Applied Info. Scis.

26   Corp. v. eBay, Inc., 511 F.3d 966, 970 (9th Cir. 2007)

27   (quoting Brookfield Commc'ns, W. Coast Entm't Corp.,

28   174 F.3d 1036, 1047 (9th Cir. 1999)).  Accordingly,

"the registrant is granted a presumption of ownership,
dating to the filing date of the application for
federal registration." <u>Sengoku Works v. RMC Int'l</u>, 96
F.3d 1217, 1219-20 (9th Cir. 1996) (citing <u>Vuitton et</u>
<u>Fils S.A. v. J. Young Enters.</u>, 644 F.2d 769, 775-76
(9th Cir. 1981); <u>Rolley, Inc. v. Younghusband</u>, 204 F.2d
209 (9th Cir. 1953)).  The presumption can be rebutted
"by showing that the registrant had not established
valid ownership rights in the mark at the time of
registration." <u>Id.</u>  In this case, both of Plaintiff's
marks are federally registered service marks; they are
therefore entitled to a presumption of validity.  <u>See</u>
Compl. ¶¶ 9, 11 Exs. A-B.  Nevertheless, Defendant
contends that Plaintiff has no valid rights in the
marks.

     To acquire ownership of a trademark, "[i]t is not
enough to have invented the mark first or even to have
registered it first; the party claiming ownership must
have been the first to actually use the mark in the
sale of goods or services." <u>Halicki Films, LLC v.</u>
<u>Sanderson Sales & Mktg.</u>, 547 F.3d 1213, 1226 (9th Cir.
2008) (quoting <u>Sengoku Works Ltd. v. RMC Int'l, Ltd.</u>,
96 F.3d 1217, 1219 (9th Cir. 1996)).  Use of a mark
means the bona fide use of such mark in the ordinary
course of trade, and not made merely to reserve a right
in a mark.  15 U.S.C. § 1127.  The term "use in
commerce" is congruent with this definition as well.
<u>See Electro Source, LLC v. Bradess-Kalt-Aetna Group,</u>

1   <u>Inc.</u>, 458 F.3d 931, 936 (9th Cir. 2006).  Consequently,
2   "[f]or both goods and services, the 'use in commerce'
3   requirement includes (1) an element of actual use, and
4   (2) an element of display."  <u>Rearden LLC</u>, 683 F.3d at
5   1204 (quoting <u>Chance</u>, 242 F.3d at 1159).

6        As a preliminary matter, Plaintiff has alleged that
7   it has used its KYTHERA marks both in connection with
8   goods and with services.  In this respect, it is
9   crucial to determine whether Plaintiff has plausibly
10  alleged that it has used the KYTHERA marks in commerce
11  in connection with both its goods and its services.

12       The Court first finds that Plaintiff has alleged
13  sufficient facts to show that it has a protectable
14  trademark interest.  Shipments of drugs for clinical
15  testing may be a sufficient use in commerce to show a
16  protectable interest.  <u>See</u> <u>G.D. Searle & Co. v.</u>
17  <u>Nutrapharm, Inc.</u>, No. 98 Civ. 6890 TPG, 1999 WL 988533,
18  at *3 (S.D.N.Y. Nov. 1, 1999) (citing S. REP. 100-515,
19  44-45 (1998), reprinted in 1988 U.S.C.C.A.N. 5577,
20  5607; H.R. No. 100-1028, at 15 (1998)) (noting that the
21  legislative history for the 1989 amendment to the
22  Lanham Act specifically cited shipments for clinical
23  trials as a sufficient use in commerce).  Here, because
24  Plaintiff alleges that its "lead product candidate" is
25  "currently in Phase III clinical development," such
26  activity may be sufficient to show that Plaintiff used
27  the KYTHERA trademark on goods in commerce.  Compl. ¶
28  1.  Specifically, it is plausible that Plaintiff has

1   shipped ATX-101 under its KYTHERA marks in connection
2   with its clinical trials.  As the Lanham Act protects
3   registered and unregistered marks (see 15 U.S.C. §
4   1125), Plaintiff has properly alleged a protectable
5   interest, even if that interest is not registered.

6        It is less clear whether Plaintiff has sufficiently
7   alleged facts showing that it has a valid, protectable
8   interest in its service marks.

9        Defendant cites to In re Canadian Pacific Ltd., 754
10  F.2d 992, 994 (Fed. Cir. 1985), for the proposition
11  that a service means "the performance of labor for the
12  benefit of another."  Mot. 8:1-7.  Several courts have
13  cited to Canadian Pacific for the idea that services
14  "must not be 'solely for the benefit of the performer;
15  the services must be rendered to others.'"  See e.g.,
16  Morningside Group Ltd. v. Morningside Capital Group,
17  L.L.C., 182 F.3d 133, 137-38 (2d Cir. 1999); In re
18  Adver. & Mktg. Dev., Inc., 821 F.2d 614, 619 (Fed. Cir.
19  1987); see also Cottonwood Fin. Ltd. v. Cash Store Fin.
20  Servs., Inc., 778 F. Supp. 2d 726, 139 (N.D. Tex.
21  2011); Huthwaite, Inc. v. Sunrise Assisted Living,
22  Inc., 261 F. Supp. 2d 502, 513 (E.D. Va. 2003).

23       However, the Ninth Circuit has held that "trademark
24  rights can vest even before any goods or services are
25  actually sold."  Brookfield Commc'ns, 174 F.3d at 152
26  (quoting New West Corp. v. NYM Co. of California, Inc.,
27  595 F.2d 1194, 1200 (9th Cir. 1979)).  The Ninth
28  Circuit employs the "'totality of the circumstances'

13

approach" to determine "whether the two prongs of the 'use in commerce' test have been satisfied." <u>Id.</u> at 1205. Under this approach, the Court may consider certain pre-sales activities "to determine whether a service mark has been adequately used in commerce so as to gain the protection of the Lanham Act." <u>Chance</u>, 242 F.3d at 1159. Such a determination is "highly fact specific." <u>Rearden LLC</u>, 683 F.3d at 1208; <u>Electro Source</u>, 458 F.3d at 940.

Actually rendering a service to third parties is not necessarily required to acquire a protectable interest. <u>Rearden LLC</u>, 683 F.3d at 1204; <u>Brookfield Commc'ns</u>, 174 F.3d at 1052; <u>Macy's, Inc. v. Strategic Marks, LLC</u>, No. 11-6198 SC, 2013 WL 1149570, at *4 (N.D. Cal. Mar. 19, 2013)). "'The purpose of a trademark is to help consumers identify the source'" of a good or service, and a mark "'is not meritorious of trademark protection until it is used in public in a manner that creates an association among consumers between the mark and the mark's owner.'" <u>Id.</u> (quoting <u>Brookfield Commc'ns</u>, 174 F.3d at 1051). What matters is whether Plaintiff's pre-sales activities "constituted 'use in a way sufficiently public to identify or distinguish the [services] in an appropriate segment of the public mind as those of the adopter of the mark.'" <u>Brookfield Commc'ns</u>, 174 F.3d at 1052 (quoting <u>New West</u>, 595 F.2d at 1200). Of course, if a party only provides services internally

14

and does not provide or offer services to outsiders,
that party likely "would fail to show use in a way
sufficiently public in nature to identify or
distinguish those services in an appropriate segment of
the public mind." Rearden LLC, 683 F.3d at 1206-07
(citing Brookfield Commc'ns, 174 F.3d at 1052).
Nevertheless, it is at least possible that a party
could use its marks in such a way as to identify its
services to the public under that mark without offering
commercial services to the public.

Here, Plaintiff has alleged that it has engaged in
some activities to identify its research services.  For
example, Plaintiff alleges that doctors writing a
letter to the editor in the Aesthetic Surgery Journal
reference both Plaintiff and Defendant by their KYTHERA
and LITHERA names, as well as the Parties' current
research.  Compl. ¶ 19 Ex. C.  Moreover, a presenter at
the "AAD annual conference" mixed up KYTHERA and
LITHERA when referencing the Parties' goods and
services.  Id. at ¶ 20.  In short, Plaintiff has
alleged instances where individuals have actually
identified the KYTHERA mark with certain research
services Plaintiff rendered.

Moreover, the very public records Defendant
presents show that Plaintiff actually offers its
research services to others.  For example, the excerpt
from the trademark records for U.S. Trademark
Registration No. 4,012,388 - U.S. Application Ser. No.

15

85/225,218 specifically states that "[i]n August 2010, KYTHERA announced a *licensing and development agreement* worth up to $373 million granting Intendis, Bayer HealthCare's dermatology business, commercialization rights to ATX-101 outside of the US and Canada." Sauter Decl. Ex. 2 p.42 (emphasis added).  The application further states that "KYTHERA and Intendis are *collaborating on the development* of ATX-101 in Europe."  Id. (emphasis added).  The excerpt from the trademark records for U.S. Trademark Registration No. 3,357,920 similarly indicates that Plaintiff and Bayer are collaborating on research for ATX-101.  Id. Ex. 3 p.57.  Such statements indicate that Plaintiff plausibly provides research services to Intendis and Bayer in connection with ATX-101.  It is plausible that Plaintiff renders its research services to such partners under its KYTHERA mark.  As such, the Court rejects Defendant's arguments that Plaintiff does not have a valid service mark for failure to provide services to others.

    2.   Likelihood of Confusion

    Defendant also argues that the Court should dismiss the Complaint because Plaintiff has not alleged any facts that could plausibly suggest a likelihood of confusion by the relevant consuming public.  Mot. 7:20-25; Reply 5:18-22.  Plaintiff avers that not only has it alleged substantial facts supporting its claims of likelihood of confusion, but also that consumer

1  confusion is not the only relevant type of confusion.
2  Opp'n 12:1-16.

3      "The likelihood of confusion is the central element
4  of trademark infringement." <u>GoTo.com, Inc. v. Walt</u>
5  <u>Disney Co.</u>, 202 F.3d 1199, 1205 (9th Cir. 2000)
6  (quoting <u>Official Airline Guides v. Goss</u>, 6 F.3d 1385,
7  1391 (9th Cir. 1993)).  Courts in the Ninth Circuit
8  typically apply the eight factors set out in <u>AMF, Inc.</u>
9  <u>v. Sleekcraft Boats</u>, 599 F.2d 341 (9th Cir. 1979) to
10 determine whether a defendant's use of a mark or name
11 creates a likelihood of confusion.  <u>See</u> <u>Rearden LLC</u>,
12 683 F.3d at 1199; <u>Lahoti v. Vericheck, Inc.</u>, 636 F.3d
13 501, 507 (9th Cir. 2011); <u>GoTo.com</u>, 202 F.3d at 1205.
14 Those factors are: (1) the strength of the mark; (2)
15 the proximity of the goods; (3) the similarity of the
16 marks; (4) evidence of actual confusion; (5) marketing
17 channels used; (6) type of goods and the degree of care
18 likely to be exercised by the purchaser; (7)
19 defendant's intent in selecting its mark; and (8)
20 likelihood of expansion into other markets.  <u>Id.</u>;
21 <u>Sleekcraft</u>, 599 F.2d at 348.

22     Plaintiff has alleged facts supporting its
23 allegations of a likelihood of confusion.  For example,
24 Plaintiff has alleged that the Parties' marks are
25 similar, are used on the same types of goods and
26 services, and that their goods will be marketed through
27 the same channels of trade, advertised in the same
28 mediums, target the same customers, and serve similar

functions.  Compl. ¶¶ 16-18.  Plaintiff has also alleged instances of actual confusion.  Id. at ¶¶ 19-20.  These alleged facts tend to show a likelihood of confusion and therefore plausibly support Plaintiff's claims.

Nevertheless, Defendant avers that Plaintiff's claims fail because Plaintiff simply cannot show that consumers will be confused because there are no actual consumers at this time.  Reply 2:22-3:11, 3:21-25, 4:4-5, 4:14-16.

Defendant is correct that the Ninth Circuit's likelihood of confusion analysis focuses on "whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." Rearden LLC, 683 F.3d at 1214 (quoting Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1140 (9th Cir. 2002)).  In fact "the *sine qua non* of trademark infringement is consumer confusion." Hokto Kinoko Co. v. Concord Farms, Inc., 738 F.3d 1085, 1096 (9th Cir. 2013).

However, Plaintiff is also correct that "non-consumer confusion may also be relevant to the 'likelihood of confusion' inquiry." Rearden LLC, 683 F.3d at 1214; see also Beacon Mut. Ins. Co. v. OneBeacon Ins. Group, 376 F.3d 8, 16 (1st Cir. 2004) (citing Landscape Forms, Inc. v. Columbia Cascade Co., 113 F.3d 373, 382 (2d Cir. 1997); Insty*Bit, Inc. v. Poly-Tech Indus., Inc., 95 F.3d 663, 672 (8th Cir.

18

1996); <u>Champions Golf Club, Inc. v. The Champions Golf</u>
<u>Club, Inc.</u>, 78 F.3d 1111, 1119-20 (6th Cir. 1996);
<u>Perini Corp v. Perini Constr., Inc.</u>, 915 F.2d 121, 128
(4th Cir. 1990); <u>In re Arctic Elec. Co., Ltd.</u>, 220
U.S.P.Q. 836, 838, 1983 WL 51896 (T.T.A.B. 1983);
Restatement (Third) of Unfair Competition § 20 cmt. b
(1995); <u>CMM Cable Rep., Inc. v. Ocean Coast Props.,</u>
<u>Inc.</u>, 888 F. Supp. 192, 200 (D. Me. 1995)).
Specifically, non-consumer confusion may be relevant
"where there is confusion on the part of: (1) potential
consumers; (2) non-consumers whose confusion could
create an inference that consumers are likely to be
confused; and (3) non-consumers whose confusion could
influence consumers." <u>Id.</u> It is clear that

confusion on the part of at least certain
non-consumers could either: (1) turn into actual
consumer confusion (i.e., potential consumers);
(2) serve as an adequate proxy or substitute for
evidence of actual consumer confusion (i.e.,
non-consumers whose confusion could create an
inference of consumer confusion); or (3)
otherwise contribute to confusion on the part of
the consumers themselves (i.e., non-consumers
whose confusion could influence consumer
perceptions and decision-making).

<u>Id.</u> at 1216. In other words, while the focus of the
Court's inquiry is on whether actual consumers are
confused, that does not necessarily mean that evidence

of confusion amongst non-consumers is irrelevant.

In any event, as indicated, *supra*, it appears that Plaintiff has used its KYTHERA marks in commerce by engaging in clinical trials and thereby likely shipping ATX-101 under its KYTHERA mark (Compl. ¶ 1), and by rendering its research and development services to its strategic partners (see Sauter Decl. Ex. 2 p.42, Ex. 3 p.57).  Contrary to Defendant's assertions (see Mot. 9:23-27; Reply 6:3-8), Plaintiff *has* alleged commercial use of its marks.  At this stage of the litigation, the Court finds that it cannot categorically conclude that there are no consumers to be confused, especially given that Plaintiff has plausibly alleged that it has used its marks in commerce.  As such, the Court finds that Plaintiff has sufficiently and plausibly alleged its claims for trademark infringement.

3.   Whether Plaintiff's Claims are Premature

Defendant contends, however, that Plaintiff's claims are premature because a likelihood of confusion analysis cannot be performed at this time.  Mot. 9:18-10:28; Reply 5:23-10:7.  Furthermore, Defendant contends that Plaintiff's claims are not ripe for adjudication because they rest "upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  Reply 5:24-6:3 (quoting Texas v. United States, 523 U.S. 296, 300 (1998) (internal quotation marks omitted).  The crux of Defendant's argument lies in its contention that neither Plaintiff

1  nor Defendant has commercially available products or
2  services.  Mot. 10:13-28; Reply 6:3-8.  Plaintiff, on
3  the other hand, argues that the Court may grant
4  injunctive relief where trademark infringement is
5  threatened or imminent.  Opp'n 15:14-24.

6      Defendant's contentions are misplaced.  Simply
7  because some of the <u>Sleekcraft</u> factors are not ripe for
8  disposition at this time does not mean that the Court
9  cannot conduct a <u>Sleekcraft</u> analysis.  See <u>Chesebrough-</u>
10 <u>Pond's, Inc. v. Faberge, Inc.</u>, 666 F.2d 393, 399 (9th
11 Cir. 1982) (affirming a district court's finding that
12 no likelihood of confusion existed even though the
13 fourth and eighth <u>Sleekcraft</u> factors were not ripe for
14 disposition).  In fact, although the parties in
15 <u>Chesebrough</u> had engaged in marketing and developing
16 products under their respective marks, there was no
17 discussion of whether the parties had already engaged
18 in product sales.  <u>Id.</u>

19     Moreover, it is clear that Plaintiff *has* alleged
20 facts pertaining to the likelihood of confusion
21 analysis that *are* ripe for disposition.  For example,
22 Plaintiff has alleged that the marks are similar "in
23 sight, sound, meaning and overall visual impression."
24 Compl. ¶ 16.  Plaintiff has also alleged two instances
25 of actual confusion.  <u>Id.</u> at ¶¶ 19-20.  Plaintiff
26 alleges that both Plaintiff and Defendant have taken
27 pronounced steps in taking their respective products to
28 market.  <u>Id.</u> at ¶ 1.

1    At this point, Plaintiff has sufficiently alleged
2 that it is currently using its marks in commerce and
3 that Defendant's use of its mark is likely to cause
4 confusion.   Such is enough to state a claim for
5 trademark infringement.   See Network Automation, Inc.
6 v. Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1144
7 (9th Cir. 2011) (quoting Dep't of Parks & Recreation v.
8 Bazaar Del Mundo Inc., 448 F.3d 1118, 1124 (9th Cir.
9 2006)).
10    In any event, to the extent Defendant contests the
11 justiciability of this Action, such an argument is more
12 properly presented as a challenge to this Court's
13 subject matter jurisdiction.   See Gemtel Corp. v. Cmty
14 Redevelopment Agency, 23 F.3d 1542, 1544 n.1 (9th Cir.
15 1994) (finding mootness and ripeness properly
16 challenged under Fed. R. Civ. P. 12(b)(1)); Jackson v.
17 City and Cnty. of San Francisco, 829 F. Supp. 2d 867,
18 870 (N.D. Cal. 2011) (citing White v. Lee, 227 F.3d
19 1214, 1242 (9th Cir. 2000); St. Clair v. City of Chico,
20 880 F.2d 199, 201 (9th Cir. 1989)).   This is especially
21 true because a court is allowed to consider facts and
22 need not assume the truthfulness of a complaint in
23 ///
24 ///
25 ///
26
27
28

22

deciding a Rule 12(b)(1) motion.  See Americopters, LLC v. FAA, 411 F.3d 726, 732 n.4 (9th Cir. 2006).

## IV.  Conclusion

For the foregoing reasons, the Court hereby **DENIES** Defendant's Motion to Dismiss the Complaint [20].

**IT IS SO ORDERED.**

DATED: February 20, 2014

RONALD S.W. LEW
_____

**HONORABLE RONALD S.W. LEW**
Senior, U.S. District Court Judge

23